DAVID D. FISCHER, SBN 224900
LAW OFFICES OF DAVID D. FISCHER, APC
5701 Lonetree Blvd., Suite 312
Rocklin, CA 95765
Telephone:   (916) 447-8600
Fax:              (916) 930-6482
E-Mail:       david.fischer@fischerlawoffice.com
Attorney for Defendant
DENAE A. BELAND


DAVID W. DRATMAN, SBN 78764
ATTORNEY AT LAW
601 University Ave, Suite 145
Sacramento, CA 95825
Telephone:   (916) 443-2000
Fax:              (916) 443-0989
E-Mail:       dwdratman@aol.com
Attorney for Defendant
BRIAN BELAND

# UNITED STATES OF DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN D. BELAND<br>DENAE A. BELAND,<br><br>Defendants. | Case No.: 2:19-CR-00021 WBS<br><br>**MOTION TO DISMISS INDICTMENT FOR PROSECUTORIAL MISCONDUCT IN GRAND JURY PROCEEDINGS**<br><br>Date: February 21. 2022<br>Time: 9:00 a.m. |

**I.     INTRODUCTION**

The defendants move to this Court to dismiss the indictment for governmental misconduct in grand jury proceedings.

## II. LEGAL STANDARDS

Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B), a defendant may raise before trial "a motion alleging a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

In advancing a grand jury misconduct claim, a defendant must overcome the presumption of regularity which attaches as a matter of law to grand jury proceedings. See, e.g., *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991). Dismissal of an indictment is appropriate only if it is established that the alleged violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

Federal courts draw their power to dismiss indictments from two sources. *United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992). First, a court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. *Id*. "Constitutional error is found where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice to the defendant." *United States v. Larrazolo*, 869 F.2d 1354, 1357-58 (9th Cir. 1989) (internal quotation and citation omitted). Constitutional error may also be found if the defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed. *Isgro*, 974 F.2d at 1094.

Second, a district court may draw on its supervisory powers to dismiss an indictment. *Id*. "The supervisory powers doctrine is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the United States Constitution or Congress to supervise the administration of justice." *Id*. (internal quotation and citation omitted). Before it may invoke this power, a court must first find that a defendant is actually prejudiced by the misconduct. *Id*. Absent "grave" doubt that the decision to indict was free from the substantial influence of the misconduct, a dismissal is not warranted. *Id*.

In *United States v. Samango*, 607 F.2d 877, 885 (9th Cir. 1979), the Ninth Circuit affirmed a district court's dismissal of an indictment because ". . . the manner in which the prosecution obtained the indictment represented a serious threat to the integrity of the judicial process." The Ninth Circuit further held that dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented. Id. at 882. Even if the prosecutor's actions constituted misconduct, an appellant still must demonstrate a "reasonable inference of bias on the part of the grand jury resulting from those actions." *United States v. De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986). In sum, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." *United States v. Costello*, 350 U.S. 359, 363 (1956).

### III.  ARGUMENT

The grand jury proceedings were tainted by governmental misconduct by the IRS concerning Terrie Prod'hon, a CPA Denae Beland consulted with at the beginning of the audit. Such misconduct before the grand jury requires dismissal of the indictment.

IRS Fraud Technical Advisor Jaymal Damodar referred the case to the criminal division. Damodar falsely claimed to the IRS criminal division that the Belands had confessed to a fraud scheme to a CPA. He drafted IRS Form F2797 with a statement that read "Furthermore, sources have revealed to the service that the taxpayer confessed to them about their scheme." **Exhibit A** - RT 766. Damodar admitted during a hearing on the Tweel motion in this case that he made a false statement. Exhibit A - RT 766. The first time he told anyone on the prosecution team that he made this false statement was after the defendants filed the Tweel motion. Exhibit A - RT 766. When Mr. Dratman asked Mr. Damodar why he made the false statement, his explanation was "overreach." Exhibit A - RT 768.

After Damodar wrote the false statement about "confessing to a fraud scheme" in the Form 2797, Damodar went over the form with Special Agent Jason Lamb. **Exhibit A**

- RT 777. Damodar identified Terrie Prod'hon as the CPA. RT 777. Damodar never told Special Agent Lamb that he the statement about "confessing to a fraud scheme" was false. Exhibit A - RT 777.

Special Agent Jason Lamb prepared an attachment to his request for permission to open a grand jury investigation. **Exhibit B** – Tweel Motion Hearing Ex D-14. In it, Special Agent Lamb wrote that he was informed by the Small Business/Self Employed section of the IRS that during its investigation that learned, in part, that

> …the Belands visited an enrolled agent [meaning CPA Terrie Prod'hon] to discuss what to expect in the audit. The Belands informed the enrolled agent that they were being examined and did not possess supporting documents for the expenses claimed on their returns to which were requested by the IRS revenue agent. The Belands wanted the enrolled agent's help in creating something they could provide during the examination. The enrolled agent balked at the insinuation of a request to help them create expenses and told them to gather everything they had and be honest and cooperative during the audit. If they had expenses that they could not support with documentation, they could explain that to the revenue agent. The enrolled agent informed the Belands that they (the enrolled agent) had worked with the assigned revenue agent before on other examinations and informed them that she was reasonable. The Belands declined to utilize the enrolled agent and found assistance elsewhere. After this first and only meeting with the Belands, the enrolled agent, a former IRS Revenue Agent, contacted the assigned revenue agent on condition of anonymity. The enrolled agent outlined what was discussed during the meeting with a warning that the Belands appeared to be shopping for someone to create false expense reports.

Terrie Prod'hon was called as a witness at the hearing on the <u>Tweel</u> motion and testified that the claims above are false. **Exhibit C -** RT 596. She denied that the Belands asked her for help fabricating expenses, denied contacting IRS Supervisor Andrew Drysdale to report the Belands, denied providing information on the condition of anonymity, denied telling anyone at the IRS that the Belands appeared to be shopping for someone to create false reports. Exhibit C - RT 596-597. Prod'hon was asked, "did you

report to Andrew Drysdale (an acting supervisor at the IRS) that Denae Beland confessed a tax scheme that she was involved with?" RT 591. Her answer was, "absolutely not." Exhibit C - RT 591. Terrie Prod'hon was shown page 3 of Exhibit B – Tweel Motion Hearing Defense Exhibit D-14, where it claimed "Denae insinuated that she wanted your help to fabricate expenses and that you balked at the insinuation." Exhibit C - RT 595. Terrie Prod'hon testified that Denae did not ask her fabricate expenses. Exhibit C - RT 595.

Despite Terrie Prod'hon later testifying at the August 2022 Tweel motion hearing that the information the IRS Civil Division claimed about her was false, the false information about what Denae Beland purportedly said to Terrie Prod'hon was highlighted by Special Agent Lamb when he testified before the grand jury. He testified that Denae Beland consulted CPA Terrie Prod'hon about their audit, and then Ms. Prod'hon called a supervisor she knew at the IRS to report "..an unsettling meeting with Denae Beland and thought there was something going on and wanted us (the IRS) to be aware of it." **Exhibit D – Transcript of Grand Jury proceedings** - BELAND_00027904. He testified that Ms. Prod'hon contacted an IRS supervisor and said, "Just want to let you know, this person came in, it was kind of unsettling, you may want to look into it." Exhibit "D" - BELAND_00027905. After discussing items of concern with the returns with Denae Beland, Ms. Prod'hon purportedly said, "We need to get all your supporting documents together… to respond to the audit." Exhibit D - BELAND_27906. In response, Denae Beland purportedly said, "We can't do that. We just came up with it." Exhibit D - BELAND_27906. Special Agent Lamb continued with providing testimony about problems with Belands' tax returns.

Special Agent Lamb unknowingly provided false testimony to the grand jury because the IRS civil division provided him false information concerning the claim that the Belands allegedly just "made up" the numbers on the tax returns. At the hearing on the Tweel motion, the Court made a finding that the Denae Beland never told Terrie

1  Prod'hon that they "made up" numbers for the tax return and that the IRS tried to twist
2  Denae's words into saying the Belands made up the numbers.

```
            THE  COURT:  No.  I've  had  that  problem  all
       along. I agree the IRS tried to twist this around
       into a statement that they made up their numbers,
       but  Ms.  Prod'hon  never  said  they  made  up  the
       numbers. She never said that Mrs. Beland told her
       that  she  made  up  the  numbers.  She  said  that  Ms.
       Beland told her that they came up with the numbers.
       (RT 1239).
```

After telling the grand jury that the Belands told a CPA that they could not provide supporting documents for their return and suggested that they just made up the numbers for their tax return, it is clear that the grand jury was tainted.  The IRS Civil Division made a number of false statements to the Criminal Division about the Belands that was communicated to the grand jury.  This is one of those flagrant cases where the Ninth Circuit has found that dismissal of an indictment is required because the grand jury has been <u>overreached</u> or deceived in some significant way, as where perjured testimony has knowingly been presented.

### IV.     CONCLUSION

For all of the reasons stated, this Court must dismiss the indictment in this case.

DATE:  February 7, 2023            /s/ David D. Fischer
                                   DAVID D. FISCHER
                                   Attorney for Defendant
                                   DENAE BELAND

DATE:  February 7, 2023            /s/ David W. Dratman
                                   DAVID W. DRATMAN
                                   Attorney for Defendant
                                   BRIAN BELAND